(No. 38955.-

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR LOGAN DAVIS, Plaintiff in Error.

*Opinion filed September 23, 1966.*

JOHN R. TRIPP, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and STUART P. SHAPIRO, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Arthur Logan Davis, was tried by jury

in the criminal court of Cook County and convicted of the crime of armed robbery for which he was sentenced to the penitentiary for a term of not less than ten nor more than fifteen years. We issued a writ of error to review the judgment of conviction.

The defendant's principal contention is that the trial court erred in ruling that his confession was voluntary. At the hearing on the admissibility of the confession the defendant testified substantially as follows. He was arrested on the night of January 2, 1963, taken to the home of a friend where the police searched an apartment, and then taken to his home where a search was also conducted. He was then taken to a Chicago police station where he was briefly questioned about the robbery. He told the police he didn't know anything about the crime and asked to call a lawyer but was told that he could not do so. He was then taken from the Chicago police station to a police station in Chicago Heights, where he arrived early on the morning of January 3. He was questioned on the way to the station and questioned briefly after his arrival there. He again requested permission to call "somebody" but his request was refused. A police officer grabbed his arm and hit him in the stomach a couple of times and placed him in a cell where he remained until about 2 or 3 o'clock on the afternoon of the 3rd, when he was removed to the women's quarters of the police station. He was the only person confined in those quarters. Sometime after midnight, early in the morning of January 4, he was taken to the detective room where he was again questioned. An officer hit him in the mouth with his fist and two officers hit him on his body with clubs. After he had been beaten he told the officers that he would tell them anying if they would leave him alone and told them that some bonds which had been stolen were hidden in the village of Harvey. The officers took him there to search for the bonds, but they were not found. He also told the officers the names of two other persons who were supposedly involved in the

robbery, but the officers were unable to find these two men. He testified that he did not know the location of the bonds or the names of any persons involved in the robbery and only gave the officers this information so that the beatings would cease. On the afternoon of January 4, he gave a statement to the police which was taken down in shorthand by a police reporter. The statement was later transcribed but the defendant refused to sign it. The defendant was not taken before a magistrate until January 9, and at that time he was then transferred to the Cook County jail.

Upon his arrival at the county jail he complained of soreness in his arms and chest and said that he had been beaten by the police. This testimony was corroborated by an official record of the jail showing such a complaint. He was examined by a physician who testified at the hearing that he found bruises on the defendant's chest and arm and that in his opinion these injuries were due to trauma. The doctor testified that the defendant did not complain of any other injuries and he found no other injuries. The doctor said that he "suspected it" and ordered an X ray of the ribs to determine if there was any fracture. The X ray was negative. He also testified that a bruised skin with redness and swelling could disappear a few hours after the injuries were inflicted. The doctor made a notation on the defendant's record that the defendant was suffering from pain in the mid-chest due to trauma and that he found a small hematoma of the left arm, and his diagnosis was "bruises of soft tissue, chest and arm".

Two prisoners who were confined in the men's lock-up in the Chicago Heights jail while the defendant was being questioned testified that they heard screams of pain during this period through the ventilating system of the jail. These prisoners also testified that they saw police officers leading the defendant from the women's lock-up to the detective room and that he was doubled over and holding his stomach. A woman friend of the defendant saw him at the Chicago

Heights jail on January 7, and stated that his arm, chest and stomach were discolored.

All of the officers who were alleged to have mistreated the defendant testified that neither they nor anyone in their presence beat or otherwise abused the defendant. They denied that the defendant had requested permission to call a lawyer. These officers testified that the defendant voluntarily confessed after his brother-in-law appeared at the station in the early morning of January 4, and told the defendant that he was lying and that he might as well tell the truth. They also testified that it was impossible for prisoners in the men's lock-up to see the defendant in the hall. The brother-in-law confirmed this conversation and said that at the time he saw the defendant he noticed no signs of injury. The stenographer who took the defendant's statement testified that she observed no signs of injury at that time and the victim of the robbery, who saw the defendant on the evening of January 4, testified that he observed no signs of injury. This witness also testified that the defendant orally admitted taking part in the robbery.

In the light of these facts we must determine whether the ruling of the trial court that the confession was voluntary can be sustained. The basic rules are well settled. The constitutional test for the admission of a confession in evidence is whether the confession was made freely, voluntarily and without compulsion or inducement of any sort. (*People* v. *Price,* 24 Ill.2d 46, 56.) A confession obtained by force or brutality is not voluntary and is inadmissible (*Brown v. Mississippi,* 297 U.S. 278, 80 L. Ed. 682, 56 S. Ct. 461; *People* v. *Cunningham,* 30 Ill.2d 433.) Since this case was tried in 1963, the strict rules of *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 and *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, with respect to the right to counsel during police interrogation are not applicable, but the lack of counsel is a factor to be considered in determining the voluntary nature of the

confession. (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772.) Likewise, the fact that an accused is held in police custody an unreasonable length of time before being taken before a magistrate does not of itself render a confession made while in custody inadmissible but such detention is also a factor to be considered in determining the voluntary nature of the confession. (*People* v. *Taylor,* 33 Ill.2d 417, 423.) We have also held that where an accused suffered injuries while in police custody, clear and convincing proof is required to establish that the injuries were not the result of police brutality. *People* v. *La Frana,* 4 Ill.2d 261, 267; *People* v. *Sloss,* 412 Ill. 61, 70; *People* v. *Thomlison,* 400 Ill. 555.

It is clear from the testimony of the physician who examined the defendant upon his admission to the county jail and from the documentary evidence that the defendant bore visible signs of injury at the time of his admission, and he registered a complaint of police brutality as soon as he had been released from the custody of the Chicago Heights police. The fact that he was injured while in police custody is corroborated to some extent by the testimony of his friend who saw him on January 7, and to a lesser extent by the testimony of the other prisoners in the Chicago Heights jail. There is no evidence in the record tending to explain these injuries on any basis other than police brutality. The State suggests in its brief and argued in the trial court that the injuries might have been self-inflicted, but this is pure supposition and finds no support in the record. There is no explanation for the failure to bring the defendant before a magistrate earlier than January 9, except that the police magistrate normally heard State cases in Chicago Heights only once a week. However, it appears that the magistrate was in his office on January 3, for on that date he altered the "John Doe" warrant under which the defendant had been arrested by inserting the defendant's name. The confession was obtained on January 4, and a possible reason for the

delay in bringing the defendant into court was to permit the defendant's injuries to heal, so as to make it more difficult to prove that he had been beaten. (*Cf. People* v. *La Frana,* 4 Ill.2d 261, 268.) It is also perhaps significant that the defendant was segregated from the other prisoners at the Chicago Heights jail. While the finding of the trial judge is entitled to great weight insofar as the credibility of the witnesses is concerned, a determination of the issue here does not rest upon a question of credibility. The undisputed evidence shows that the defendant was injured while in police custody and that the injuries were not explained by the State; that the defendant was held in police custody for a week without a hearing; and that he was without counsel. In our opinion the confession obtained under these circumstances was not voluntary and the trial judge erred in ruling that it was admissible.

The defendant was allegedly the driver of the get-away car used in the robbery but was never identified as a participant. Apart from the confession, the only evidence linking him with the crime is that shortly before and after the robbery he was seen in the company of two men whose descriptions somewhat matched the descriptions of the robbers. These two men were never apprehended and it was therefore never established that the men with whom the defendant had been seen were the persons who committed the robbery. In the absence of the confession, the evidence is clearly insufficient to establish the defendant's guilt beyond a reasonable doubt and the cause will, therefore, not be remanded for a new trial. The judgment of the criminal court of Cook County is, therefore, reversed.

*Judgment reversed.*