THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES M. SANDERS, Defendant-Appellant.

Second District   Nos. 77-282, 77-311 cons.

Opinion filed December 7, 1977.

Mary Robinson, Daniel Cummings, and Allen L. Wiederer, all of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of armed robbery of Smith T. Randol. He was also convicted of armed robbery of James Collins. The defendant was sentenced to concurrent terms of four to 12 years imprisonment. The defendant was also charged with attempted armed robbery of Frank Barbero, but this charge, as well as an aggravated battery charge involving Collins, was dismissed on the motion of the State. The defendant contends that the trial court erred in admitting statements which the defendant made to law enforcement officers while in custody, after asking to see an attorney. The charges against the defendant were the result of three separate incidents which occurred in Winnebago and Boone Counties on the evening of January 12-13, 1977.

It appears from the docket entries of the circuit court of Winnebago County that a preliminary hearing was held on January 20, 1977, at the conclusion of which the court held that there was probable cause. No transcript of the preliminary hearing has been included in the record on appeal, however.

On March 16, 1977, a hearing was held on the defendant's motion to suppress certain statements which he had made while in custody, following his arrest. At the hearing, Officer Charles Bishop of the Rockford Police Department testified that at 1 a.m., January 13, 1977, he observed three men struggling near the corner of State and Madison Streets in Rockford. As Bishop approached, two of the men fled and the third man fell to the ground. Officer Bishop recognized one of the pair as the defendant, whom Bishop knew from prior investigations. Bishop began a foot pursuit of the two subjects. He saw the two men get into a green Buick and begin driving away, but continued his pursuit. Moments later he encountered Rockford Officers Frew and Lindstrom, who were sitting in a patrol car, and told them that the persons in the Buick had been involved in a fight. Frew and Lindstrom then pursued the Buick, while

Bishop returned to help the man whom he had left lying on the ground. That man, Frank Barbero, told Bishop that the incident had not been a mere fight, but that the other two men had attempted to rob him. Barbero advised Bishop that the men were armed with a chrome-plated revolver.

Officer Frew testified that he saw a green Buick speed past them and that immediately thereafter, Officer Bishop ran up to the squad car and told Frew and Lindstrom to pursue the Buick. During the subsequent pursuit, the Buick weaved in and out of traffic at 70 miles per hour. Finally, the officers were able to pull the Buick over. There were three men in the car: The defendant, James M. Sanders, Mark Manley and Boyce Smelser. The officers searched the car and found a .32-caliber revolver with what appeared to be dried blood on it. A "club-type" instrument was also found on the back floor of the car. Other testimony established that the defendant and his companions were advised of their rights at the scene of the arrest, and then taken to the police station. At the station, the defendant was again advised of his rights, signed a "waiver of rights" form, and gave a statement denying any participation in the offense. He was then taken to jail, where he slept.

Six hours later, at approximately 9 a.m., the defendant was interrogated by Rockford Police Detectives Bland and Fegan. The officers again read the defendant his rights, and asked him if he understood them. The defendant replied that he did, but according to the testimony of Detective Fegan, the defendant stated that he "didn't want to talk to us, that he wanted to talk to his attorney first." However, the detectives did not cease their interrogation. Instead, Detective Bland responded that "that was his perogative," but he "wanted to point out a few facts in the case to him." Bland then told the defendant that the police had obtained an oral statement from Smelser and a written statement from Manley. When the defendant asked to see the statement, which the officers had obtained from Manley, they told him that they "were not allowed to do that," but folded the statement so that only the signature was visible, and showed Manley's signature to the defendant. Detective Fegan then advised the defendant that the police "had a strong case," and "discussed" the penalties for the offense of armed robbery with the defendant. The defendant testified that Detectives Bland and Fegan told him that they "had enough evidence for a conviction," and that they would see to it that he would receive the maximum penalty, unless he cooperated, but that if he cooperated, the detectives would see that the defendant would receive a "very very light sentence." Detective Fegan, however, stated that after their discussion of the evidence and penalties applicable in the case, the defendant said that he "wanted to think about it some more." A few minutes later the defendant said that he "might as well take care of it" and gave the detectives oral and written statements, generally admitting his

role in the attempted robbery of Frank Barbero, but claiming that he had changed his mind about robbing Barbero, after Manley grabbed Barbero, and only fought Barbero and pointed his gun at him in an effort to disengage from the melee between Barbero and Manley.

The defendant subsequently gave statements to law officers from the Winnebago and Boone County sheriff's departments. In a statement which he gave to the Winnebago County officers at approximately 6 p.m., the defendant admitted his involvement in the armed robbery of Smith T. Randol. At 9:22 p.m. he gave a statement admitting the attack upon, and robbery of James Collins to officers from Boone County.

The defendant's testimony at the suppression hearing was, in significant respects, at variance with that of the various law enforcement officers who testified for the State. He claimed, among other things, that he confessed to the Barbero robbery because the police had told him that he would not get the benefit of counsel until he made a statement, and that his requests for counsel during the subsequent interrogations were ignored. The officers denied making such statements to the defendant and the trial judge resolved the conflicting testimony in the State's favor when it denied the defendant's suppression motion.

On March 21, 1977, the defendant's case came before the court for trial, and the defendant's counsel informed the court that the defendant had entered into plea negotiations with the State's Attorney's office and that he believed that the defendant was prepared to tender a plea to the court. Defense counsel further informed the court that under the terms of the plea arrangement, the defendant would plead guilty to the two armed robbery charges, and the State would move to dismiss the attempt armed robbery charge and the aggravated battery charge, and recommend a penalty of terms of four to 12 years imprisonment, to run concurrently on both charges. The judge requested that the State's Attorney inform the court of the factual basis for the plea, and the prosecutor summarized, in narrative fashion, the State's version of the events leading to the defendant's arrest. The court then informed the defendant of his rights and determined that the plea was voluntary, in accordance with Supreme Court Rule 402. (Ill. Rev. Stat. 1975, ch. 110A, par. 402.) To this point, the hearing on March 21 was in the procedural form which is customary where a defendant tenders a guilty plea, pursuant to a plea arrangement with the State.

However, at the conclusion of the trial court's admonitions, the defendant upset this procedure by asking whether his entry of a guilty plea would terminate his right to appeal from the trial court's denial of his suppression motion. The trial court called a recess in order to explore this problem, and the defendant and his counsel had further discussion with the prosecutor. When the court reconvened, it asked defense counsel

whether he had "something that will preserve [the defendant's] right to appeal." Defense counsel responded in the affirmative, indicating that he and the defendant had discussed the matter, and agreed that the prosecutor could "tender an offer of proof to the court." The prosecutor then stated that he "would offer, and [he] understood that the defense will stipulate [to] the evidence presented at the defendant's preliminary hearing, also the evidence presented at the motion to suppress that we had last week," and also the statement of facts which the prosecutor had recited a few minutes before. At this point, defense counsel volunteered that the prosecutor was correct, and that the defense "would stipulate that would be the State's proof in this case," waive trial by jury, and allow the court to accept the stipulation and testimony at the earlier proceedings "as evidence." The trial court ascertained that the defendant understood that he was giving up his rights to a jury trial, and to confront the witnesses against him. The court then stated that if it accepted the offer of proof as evidence, it would have no choice but to find, beyond a reasonable doubt, that the defendant was guilty of the armed robbery of James Collins and Smith T. Randol. The court asked the defendant if he understood that he was now giving up the right to testify on his own behalf, and the defendant responded that he did. The trial court told the defendant that when he sentenced him, he "would still consider the agreed plea as to the sentence," and again ascertained that the defendant understood the terms of the original plea agreement. At the conclusion of the hearing, the court rendered a judgment which followed the terms of the earlier plea agreement. Therefore, the end result of the defendant's concern regarding the preservation of any error in the court's denial of his suppression motion was that the defendant avoided the specific procedural limitations which are imposed upon the scope of an appeal from a judgment entered upon a plea of guilty (see Supreme Court Rule 604(d)), yet stipulated to the State's proofs on each of the charges against him.

■■ On appeal, the defendant's counsel has argued ably that the trial court erred in failing to suppress evidence of the statement which he gave to Detectives Bland and Fegan, admitting a role in the attempted robbery of Frank Barbero. We agree. In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court clearly stated that although a suspect in police custody may waive his right to remain silent, and to the presence of an attorney, where he "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning," but "\* \* \* the interrogation must cease until an attorney is present." (384 U.S. 436, 444-45; 474; 16 L. Ed. 2d 694, 707, 723, 86 S. Ct. 1602, 1628, ___; see also, *People v. Washington* (1977), 68 Ill. 2d 186.) Since the defendant told

Detectives Bland and Fegan that he desired to see an attorney before signing a "waiver of rights" form, it is clear that all interrogation should have ceased at that point.

■■■ The State has argued that the record merely shows that the officers had conversation with the defendant after he requested counsel, in an effort to "make certain that the defendant had before him all the information to make a truly informed decision about waiving his rights and making a statement," "possibly even with the thought in mind that the defendant could relay the information to the lawyer whom he wished to call," and that such conversation did not constitute "questioning" or "interrogation" within the meaning of *Miranda*. The scenario which the State has attempted to construct on appeal, of two officers whose only fault was excessive zeal in attempting to act in the defendant's best interest, lacks objective support in the record. Further, police remarks to a defendant, after he has requested counsel, need not be purely interrogative in character in order to constitute impermissible "interrogation" or "questioning" within the meaning of *Miranda*; where the objective of such remarks to the defendant is to gain a response or admission, the remarks will constitute "interrogation," regardless of the form that they take. (See *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232; *Combs v. Wingo* (6th Cir. 1972), 465 F.2d 96; *People v. Pendleton* (1974), 24 Ill. App. 3d 385.) Our review of the record convinces us that the remarks that Detectives Bland and Fegan made to the defendant, after the defendant requested counsel, were designed to elicit a response from him and, therefore, constituted impermissible interrogation under *Miranda*. Thus, the defendant's statement concerning the attempted robbery of Frank Barbero should have been suppressed.

■■ Nonetheless, we find no error in the trial court's refusal to suppress the defendant's subsequent statements concerning the robberies of Smith T. Randol and James Collins. These statements were obtained some nine to 12 hours after the interrogation by Bland and Fegan, and concerned different offenses from that which was involved in the earlier interrogation. Furthermore, in each of the latter instances, the interrogating law officers obtained a "waiver of rights" from the defendant, prior to commencing their interrogation. Under these circumstances, the effect of the earlier procedural violation of the *Miranda* standards was "sufficiently dissipated" by lapse of time, repeated admonitions, and other factors, so that the statements to the officers from the Winnebago and Boone County sheriff's departments were properly admitted. See *People v. White* (1975), 61 Ill. 2d 288, 297.

Further, it is clear that the trial court's error in denying the defendant's motion to suppress his statement regarding the attempted armed robbery of Frank Barbero does not require a reversal of either of the defendant's

other convictions. It is not the policy of courts of review in this State to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied, or that the finding of the court or jury resulted from the error. See, *e.g.*, *People v. Madison* (1974), 56 Ill. 2d 476; *People v. Morehead* (1970), 45 Ill. 2d 326, 333.

■■ Here, the statement which the defendant gave Detectives Bland and Fegan directly related only to the charge regarding the attempted robbery of Frank Barbero, which was dismissed by the State, and lent only inferential support to the charges upon which the defendant was convicted. In addition, under the procedure which the State and the defense devised to enable the defendant to gain the benefit of the previously negotiated plea arrangement without the detriment of being in a position of appealing from a judgment entered upon a plea of guilty, the trial court could not reasonably have found that the defendant was innocent. The defendant stipulated, not only to the evidence which was admitted at the preliminary and suppression hearings, but also to the statement of facts presented by the prosecutor in response to the court's request for the factual basis of the defendant's plea. At the same time, the defendant failed to offer any evidence on his behalf. Under these circumstances, the trial court could not, on this record, have entertained a reasonable doubt of the defendant's guilt, even had it wholly ignored the statement which the defendant gave to Officers Bland and Fegan.

There can be no doubt that the procedural device used by the defense and prosecution in this case, to meet their perception of the needs of moment, did not constitute an example of good practice by either side. The Supreme Court of Illinois expressed dissatisfaction with the use of such a "stipulated bench trial" in the cases of *People v. Stepheny* (1974), 56 Ill. 2d 237, and *People v. Smith* (1974), 59 Ill. 2d 236. In those cases, the court held that where a bench trial on stipulated evidence is "tantamount to a guilty plea," and the accused is not afforded the protections set forth in Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par. 402), the conviction cannot stand.

However, in the instant case, the trial court admonished the defendant substantially in accordance with Supreme Court Rule 402(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 402(a)), determined that the defendant had entered into the arrangement voluntarily, and determined the factual basis for the arrangement. The terms of the arrangement were stated in open court, and the court, by questioning the defendant, confirmed the terms of the arrangement, and the fact that it was not the result of threats, or of promises that were not a part of the agreement between the prosecution and defense. Thus, although the defendant did not tender a guilty plea, it appears that he was nonetheless afforded the protections of

Supreme Court Rule 402; this case is therefore distinguishable from *Stepheny* and *Smith*.

■■ The general rule is that an accused "may by stipulation waive the necessity of proof of all or any part of the case which the People have alleged against him and that having done so, he cannot complaint ⁕ ⁕ ⁕ of evidence which he has stipulated into the record." (*People v. Hare* (1962), 25 Ill. 2d 321, 324; accord *People v. Hawkins* (1963), 27 Ill. 2d 339.) To allow the defendant to escape the application of this rule on the record herein would enable him to avoid the effect of the stipulation which he agreed to make on two of the charges against him, while accepting the benefit of the State's agreement to dismiss the other two charges. This would be an incongruous and unacceptable result. (*Cf. People v. Stacey* (1977), 68 Ill. 2d 261, 267.) We therefore apply the rule that the defendant is bound on appeal by the stipulation which he freely and knowingly entered into at trial, and hold that any error by the trial court in failing to suppress the statement which the defendant gave the detectives, Bland and Fegan, could not have affected the outcome of the case as presented and was, therefore, harmless error beyond any reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.