THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES E. TAYLOR, Defendant-Appellant.

Second District   No. 77-230

Opinion filed June 21, 1978.

Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

38

Mr. JUSTICE GUILD delivered the opinion of the court:

In a bench trial the defendant was convicted of burglary, armed robbery and rape. Defendant did not testify. He was sentenced for the offenses of armed robbery and rape to concurrent terms of not less than 6 nor more than 18 years. The defendant was 16 years of age at the time of the commission of these offenses and 17 years of age at the time of sentencing. Defendant appeals from the order of the court transferring him to the adult division of the circuit court and also appeals from the convictions and sentences imposed.

The complaining witness, a woman 70 years of age, testified that in July 1976, about 10:20 in the evening, a person broke into her house by removing a screen from the dining room window. She saw a black man sitting in the window who said he would kill her if she screamed again and showed her a knife. She testified that he then tied her hands behind her back and covered her head with a sheet and she was raped. He then demanded money and she went down to the freezer room and gave him her purse. He went through the purse while sitting on top of her as she was lying on the dining room floor. She testified that the last time she knew, the purse contained $2000. She was unable to identify the defendant. She immediately went to the neighbors and when they returned the purse was found lying on the dining room floor. She also received a swollen lip and two cuts on her mouth. The screen from the dining room window, which was found lying on the ground outside the house, had the defendant's fingerprint on it.

On the morning of July 30, 1976, the defendant was given his *Miranda* warnings and he made a statement to the police which was transcribed and signed by him. In that statement defendant said that he and Alvin Sanders went to the victim's home on the night in question and that Alvin entered the house through the window but that he ran away. This statement was signed at 3 in the afternoon. Later that evening the defendant made a second statement to the police which was transcribed and signed by him. In the second statement defendant admitted that he had grabbed the victim, put his hands over her mouth and demanded all of her money and that they both went to the closet to get her purse. He took $250 from the purse and some small change from a dish and then tied up the victim. He denied that he had raped the victim. The next day, July 31, 1976, the defendant was again questioned by police after he had been given his *Miranda* warnings, and he orally admitted that he had broken into the house in question and that he had torn up a sheet and tied the victim's hands and then raped her. He also admitted orally that his second written statement was correct except for his denial of having raped the victim. On October 28, 1976, an extended motion was heard by the court to suppress the foregoing three statements. At the conclusion of the

hearing the trial court suppressed the two written statements on the grounds that the defendant had requested an attorney. The court refused to suppress the oral statement given the following day, observing that the defendant had been given his *Miranda* warnings and had expressed no desire for a lawyer at that time.

On August 12, 1976, pursuant to the provisions of section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(3)(a)), a lengthy hearing was held on the motion to permit the prosecution of the defendant as an adult under the criminal laws. The court ordered that defendant be transferred and be tried as an adult for the criminal offenses charged.

The defendant has raised five issues for review. The first is that the provisions of section 2—7 of the Juvenile Court Act are unconstitutional. In support of this contention the defendant alleges: (1) that due process is denied by the statute as there is no guidance therein concerning the burden of proof to be applied; (2) that the relaxed rules of evidence to be applied at such a hearing do not provide the necessary safeguards; (3) that the statute does not set forth a procedure by which the trial court is to weigh the six factors found in section 2—7(3)(a); and (4) that the statute is unconstitutional as it provides no immediate appeal from the order of transfer by the defendant. Although defendant raises four other issues, in the view we take of this case, we will only discuss the issue of whether all of defendant's statements, including the third oral statement, should have been suppressed.

We turn first to the defendant's broad allegation that the provisions of section 2—7 of the Juvenile Court Act are unconstitutional. Insofar as the defendant's first two contentions are concerned, the basic question is whether a section 2—7 transfer hearing is an adjudication of questions of fact or whether it is a proceeding where, after acquiring information and considering various criteria, the magistrate, in his discretion, imposes the will of the sovereign people upon the individual concerned.

The defendant has argued that to be consistent with due process section 2—7 should define the burden of proof to be followed at a transfer hearing and, secondly, that it should require that the normal rules of evidence apply.

In considering the validity of the defendant's contentions we have examined the statute involved as well as similar statutory provisions. Section 2—7(3)(a), when enacted, provided, in part, that:

> "The burden and standard of proof shall be the same as under Section 5—1 of this Act." (Ill. Ann. Stat., ch. 37, par. 702—7(3)(a) (Smith-Hurd 1972).)

However, this same section, as amended by Public Act 78-341, presently reads as follows:

"The rules of evidence shall be the same as under Section 5—1 of this Act." (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(3)(a).) Section 5—1 sets out the procedure for gathering information at the dispositional hearings conducted after a juvenile is adjudicated a ward of the court. That dispositional hearing is akin, in many respects, to a criminal sentencing hearing conducted pursuant to section 5—4—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—4—1). At both types of hearings virtually all relevant information, including hearsay, is admissible so that the judge may intelligently decide the fate of the individual concerned. No "burdens of proof" such as "beyond a reasonable doubt" or "to a preponderance of the evidence" apply at either of those proceedings since questions of fact are not before the court. Rather, the matter at hand is one of sentence or disposition which is a decision solely within the discretion of the trial judge. His decision may not be modified on appeal unless there is manifest abuse of discretion. Similarly, since there is no issue of fact to be proved or disproved at such proceeding, the relaxed rules of evidence do not violate due process, since, in essence, neither side is proving a case. In the light of these quite similar statutes it is obvious why the legislature amended section 2—7, as we have noted above. They realized that where there is no question of fact there can be no burden of proof.

■■ We hold, therefore, that a section 2—7 proceeding is not an adjudicatory proceeding but rather it is an exercise of discretion by the representative of the sovereign. Since ultimate facts need not be proved, neither burdens of proof nor the strict rules of evidence are applicable. Due process does not suffer by their absence.

■■ Defendant's counsel has also contended that section 2—7(3) is unconstitutional in that the statute does not state how the six factors recited by that statute are to be weighed by the trial judge and, secondarily, that the statute does not require the judge to make a statement explaining his order. The latter contention is one which is not properly before us. We agree that the juvenile court judge must "* * * accompany its waiver order with a statement of the reasons or considerations therefor* * *," as was stated in *Kent v. United States* (1966), 383 U.S. 541, 561, 16 L. Ed. 2d 84, 97, 86 S. Ct. 1045. However, the Supreme Court went on to say, "We do not read the statute [District of Columbia Juvenile Court Act] as requiring that this statement must be formal or that it should necessarily include conventional findings of fact." In the case before us the juvenile court judge presiding at the transfer hearing did, in fact, state for the record the reasons which he found sufficient to support the transfer of the defendant herein to be tried as an adult. Therefore, we need not, and will not consider this issue.

As to the contention that section 2—7(3)(a) is unconstitutional because

it does not set out a weight to be applied to the various factors recited in the statute, we feel it is an argument without merit. As pointed out in *Pedrosa v. Sielaf* (N.D. Ill. 1977), 434 F. Supp. 493, 496-97:

> "Subsequent to petitioner's transfer, the Illinois legislature amended the transfer statute to supply standards for the transfer decision. [Citation.] While these standards have been criticized as ambiguous, we conclude that they are specific enough to satisfy due process."

Furthermore, we know of no rational reason why the statute involved here should be any more explicit than it is with regard to the weight which must be given the six listed factors. It is apparent to us, and necessarily so in the context of the Juvenile Court Act, that each case brought before the court under the provisions of section 2—7, should be decided on its own merits.

■■ The last contention made by the defendant as to the transfer hearing is that he should be allowed an immediate appeal from the order of transfer due to his alleged loss of "rights" under the Juvenile Court Act. This issue was squarely presented in *People v. Jiles* (1969), 43 Ill. 2d 145, 251 N.E.2d 529. Defendant's counsel here urges that that decision was undermined by the provisions of the new act which vest the determination for transferring the minor in a juvenile court judge rather than in the prosecutor. We fail to see any distinction between the former act and the new one in this regard. In *People v. Martin* (1977), 67 Ill. 2d 462, 465-66, 367 N.E.2d 1329, 1331, the supreme court, in discussing *Jiles*, stated:

> " * * * we were dealing there with an attempted appeal by the juvenile from an order allowing the criminal prosecution. As the opinion in *Jiles* indicates, the order is reviewable on appeal by the juvenile from the criminal conviction if a conviction occurs. In contrast, an order denying the removal motion is not reviewable by the People at the conclusion of the juvenile proceedings."

We adhere to the holding of *Jiles* which found that interlocutory review of transfer orders would only delay both juvenile and criminal proceedings, with the result that a just disposition of the case would be jeopardized. The rather strained logic of the defendant's contentions in this regard does not convince us to hold contrary to the mandate of the supreme court, even if we were wont to do so.

We turn then to the contention of the defendant that once he had requested an attorney all questioning should have stopped. Prior to any questioning on July 30, 1976, the defendant was given the *Miranda* warnings with the exception of the admonition that if he were indigent, counsel would be appointed for him if he desired. Defendant testified that prior to making any statement he asked to talk to an attorney. The police officers involved in the first questioning testified that defendant

only requested an attorney at sometime after the questioning had begun. At any rate, defendant attempted to call the attorney of his choice and left a message at the office. Questioning of the defendant continued. After some time the attorney returned defendant's call but refused to take the case. According to the police officers' testimony, at that time defendant "said he would rather have Mr. Olson but he didn't know who to get now." Defendant was upset and crying at the time. Nonetheless, the questioning continued. After a total of five hours of interrogation defendant made his first statement at 3 p.m. It was transcribed and then signed by him. In it he admitted going to the victim's house with another person but stated that he never entered the house and that the other person entered and must have committed the crimes alleged. This first statement was suppressed by the trial court.

The second statement made by defendant was given at 10:45 p.m. on the same date. In this statement he admitted the burglary and the armed robbery but denied raping the victim. This statement was also transcribed and signed by defendant. Prior to giving the second statement defendant was asked if he had received his *Miranda* rights that morning and understood them. The warnings themselves were not repeated verbatim at that time. At sometime during the second statement defendant apparently asked the officers if he should have an attorney and they told him that that was up to him. The second statement was also suppressed by the trial court.

Defendant's third statement was made at 10:30 the following morning after full *Miranda* warnings were given and after the defendant had signed a waiver of rights form. In the third statement the defendant acknowledged that the second statement, in which he admitted the burglary and armed robbery, was correct but that he had also raped the victim. This statement was oral and was not transcribed or signed by the defendant but the substance of it was admitted into evidence against him. The two officers present at the time defendant made the third oral statement testified that he made no specific request for an attorney at the time of that statement. At that time, after admitting the offenses charged herein, defendant asked to see his brother and was allowed to do so before further questioning concerning other offenses. At no time did defendant ever see or speak to an attorney, with the limited exception of the short telephone conversation with attorney Olson, who refused to take the case.

Since *Miranda* (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), many decisions have been written by the courts as to the application of the principles enunciated therein. No useful purpose would be served in citing all of those cases but we will cite the ones pertinent to this decision.

In *Miranda* the Supreme Court stated:

"If * * * [the accused] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning* * *." 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612.

" * * * the right to have counsel present at the interrogation is indispensible to the protection of the Fifth Amendment privilege* * *." 384 U.S. 436, 469, 16 L. Ed. 2d 694, 721, 86 S. Ct. 1602, 1625.

" * * * any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." 384 U.S. 436, 474, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1628.

* * *

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." (384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628.)

The question then arises as to whether the defendant may ever be questioned subsequent to his request for an attorney. This issue was discussed in *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321, where the Supreme Court held that the prohibition against further questioning should not be construed to create a per se proscription of indefinite duration upon further custodial interrogation of a defendant who asserts his right to remain silent. This same logic does not apply to subsequent interrogation where the defendant originally asked for an attorney unless there is a knowing and intelligent waiver of the right to counsel. In *Mosley* the Supreme Court reiterated that *Miranda* governs the situation in which a person requests counsel and that all questioning must cease until an attorney is present. (423 U.S. 96, 101 n. 7, 46 L. Ed. 2d 313, 320 n. 7, 96 S. Ct. 321, 325 n. 7.) As a result of *Mosley* the courts of Illinois have, under limited circumstances, held certain confessions admissible. In *People v. White* (1975), 61 Ill. 2d 288, 335 N.E.2d 457, there was a lapse of 36 hours from the time defendant first requested an attorney to the confession. During the intervening period he was questioned as to unrelated offenses. The following day, after again being given the *Miranda* warnings, defendant confessed to the crime in question. The supreme court said in *White:*

"While the case is a close one, we are of the opinion that the effect of the procedural violation of the *Miranda* standards was sufficiently dissipated by lapse of time, repeated admonitions and

other intervening events so that the defendant's confession was voluntary and was therefore properly received in evidence." (61 Ill. 2d 288, 297, 335 N.E.2d 457, 463.)

But see *White v. Finkbeiner* (7th Cir. 1978), 570 F.2d 194.

Likewise, in *People v. Sanders* (1977), 55 Ill. App. 3d 178, 370 N.E.2d 1213, we considered the interrogation of the defendant 12 hours after an earlier improper interrogation. This subsequent interrogation concerned different offenses than those involved in the earlier question and we held:

" * * * the effect of the earlier procedural violation of the *Miranda* standards was 'sufficiently dissipated' by lapse of time, repeated admonitions, and other factors, so that the statements to the officers from the Winnebago and Boone County sheriff's departments were properly admitted." 55 Ill. App. 3d 178, 183, 370 N.E.2d 1213, 1217.

In *People v. Washington* (1977), 68 Ill. 2d 186, 194, 369 N.E.2d 57, 60, our supreme court held that the right to counsel may be waived but stated that the State must meet the "heavy burden * * * to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." In *Washington* the defendant, at 9:30 in the morning, had stated that he wanted the public defender, had tried unsuccessfully to contact the public defender in the afternoon, and later requested a priest and a psychiatrist in the evening. The supreme court held that defendant's statement, made after seeing a priest in the evening, was improperly admitted.

The most recent pronouncement of our supreme court upon this issue is contained in *People v. Medina* (1978), 71 Ill. 2d 254, 375 N.E.2d 78. Medina, a juvenile, was arrested in the early hours of the morning and taken to the station. He refused to make any statements without consulting an attorney. Several hours later another officer resumed questioning of the defendant without his having had the opportunity to consult with an attorney. His signed confession included a waiver of his rights but the supreme court found that insufficient evidence that defendant had knowingly and intelligently waived his right to remain silent and have counsel present. Similarly, the appellate courts of this State have repeatedly suppressed confessions which were made after requests for counsel were not honored. See, *e.g.*, *People v. Mrozek* (1977), 52 Ill. App. 3d 500, 367 N.E.2d 783; *People v. Morrissey* (1977), 49 Ill. App. 3d 622, 364 N.E.2d 454.

■■ While this is a particularly vicious crime which the defendant admitted in his second and third statements, nonetheless the dictates of *Miranda* are such that we find that the third statement should have been suppressed, as were the prior statements. We do not find that *People v.*

*White and People v. Sanders* are applicable to the facts of the case before us. We do not find that the initial request for an attorney was "sufficiently dissipated." All interrogation should have ceased upon defendant's first request for an attorney. Nevertheless, the police continued questioning defendant about the same offense and ignored a second indication that defendant wanted to consult with counsel. The interrogation of the defendant resulting in this third confession on the morning following his arrest related specifically to the statements contained in the second confession made by him. Thus, we find that the State failed to meet its "heavy burden" of showing defendant waived his previously invoked right to counsel. We must therefore reverse and remand.

Reverse and remand.

BOYLE and WOODWARD, JJ., concur.