THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CARLOS VAN SCYOC, Defendant-Appellant.

Fourth District   No. 17522

Opinion filed August 9, 1982.

Daniel D. Yuhas and Janet Sinder, both of State Appellate Defender's Office, of Springfield, for appellant.

Daniel S. Arbogast, State's Attorney, of Toledo (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

After a bench trial in the circuit court of Cumberland County, a judgment was entered on August 31, 1981, finding defendant, Carlos Van Scyoc, guilty of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4). He was subsequently sentenced to 3 years' imprisonment. On appeal he contends: (1) the trial court erred in admitting, as spontaneous declarations, testimony of statements made by Amanda and Michael Titus; (2) his guilt was not proved beyond a reasonable doubt; (3) error resulted from admissions of other testimony; and (4) the

State violated discovery rules.

We conclude that the evidence of the statements of the two Titus children was pure hearsay, not coming within the spontaneous declaration exception, and its admission was reversible error. Because, absent that testimony, the evidence was insufficient, as a matter of law, to prove the guilt of the defendant, we reverse the conviction and sentence without remandment. We need not consider defendant's other claims of error.

Most of the evidence of the surrounding circumstances was undisputed. On the evening of February 16, 1981, at approximately 7:45 p.m., defendant emerged from Sandy Titus' home carrying her youngest child, Laura. The child was having trouble breathing and appeared to be semiconscious. Defendant was a friend of Sandy Titus and was babysitting for her three children while Sandy had gone to the grocery store. Defendant told Sandy's neighbor, Robert Stewart, that he had just given Laura a bath, and she fell off the bed when he turned away. Stewart then drove defendant and Laura to a local physician's home.

Stewart left defendant at the physician's home and returned to the Titus home to get Sandy. In the meantime, the physician and defendant took Laura to the hospital. Stewart and Sandy Titus dressed Laura's sister and brother, Amanda and Michael, aged five and four, respectively, and took them to Stewart's home. The children had, in the past spent considerable time there. The children stayed with Stewart and his father for an hour to an hour and a half, watching television and, according to Stewart, carrying on normal conversation. The children's grandparents then arrived and took the children to the home of their father, Mark Titus, and his present wife Kitty. They arrived there at approximately 11 p.m.

Testimony concerning the emotional state of Amanda and Michael was somewhat conflicting. Robert Stewart and their natural mother, Sandy Titus, both testified that when they arrived at her home, the children were not crying, did not appear upset and did not indicate anything was wrong. Sandy Titus stated the children were sitting calmly on the couch. On the other hand, Kitty Titus, their stepmother, testified that when the children arrived at her home, three or four hours later, they were very upset.

Two physicians who treated Laura in the hospital described the head injuries she had received. They also testified that they suspected she was a victim of child abuse. One physician stated Laura's injuries were unlikely to be the result of falling from a bed.

The principal thrust of the evidence against defendant was the

testimony of Kitty Titus that after Amanda and Michael Titus arrived at her house they told her defendant "kept throwing [Laura] in the water." The statements in the record by the trial judge indicate he placed great reliance on that evidence. He stated that the testimony of the physicians did not establish with certainty how the child's injuries occurred.

Defendant objected to the trial court's admission of the testimony of Kitty Titus as to the statements made to her by the children and has preserved the issue for review. He maintains it was pure hearsay and did not come within the spontaneous declaration exception as claimed by the State. We agree.

■ The requirements for admissibility into evidence of a spontaneous declaration are (1) the occurrence of an event or conditions sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence. *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.

Cleary and Graham state that some latitude exists as regards the permissible lapse of time between the event and the statement. The question is whether the statement was made while the excitement of the event predominated and the lapse of time is but one factor to be considered. (Cleary and Graham, Handbook of Illinois Evidence sec. 803.3, at 427 (3d ed. 1979).) In *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310, this court stated that other factors to be considered include the nature of the event, the condition of the declarant, the influence of intervening occurrences, and the presence or absence of self-interest. There, the declarant was the victim of a shooting who was found lying along the side of a road suffering from three bullet wounds and in a state of shock at the time the statement was made. The time interval between the shooting and the statement may have been more than one hour. This court held that under those circumstances the lapse of time did not render the statement inadmissible.

In *People v. Watson* (1982), 107 Ill. App. 3d 691, a child's statements were admitted as spontaneous declarations even though they were given approximately two hours after the incident. She was not excited, and she had reason to fabricate. In that case the declarant was a three-year-old child who allegedly had been raped by her father. The "spontaneous declarations" were the first words the child spoke after her mother discovered her injury. The court noted that she had been out of the presence of her father for only a short time when the statements were made. Her mother testified to her withdrawn manner, and she had been asleep in bed for nearly one hour before the

injury was discovered.

■ Here, the time lapse between the event, the injury to Laura, and the declaration of the children was three to four hours. The evidence was undisputed that for a substantial time after the event the children were not upset or startled. If they were upset by the time they reached their stepmother's, their condition could well have resulted from matters other than the injury to their sister. Significantly, the declarants in *Parisie* and *Watson* were the victims of the crimes and thus more likely to remain startled for a longer period of time than would be the case here where they were merely witnesses to the event. The lapse of time between the event and the declaration was longer here than in any cited case where the declarant was not a victim and the admission of the declaration was approved. While children of such tender years might be less likely to fabricate than would older persons, we must conclude that the time available here for the children to reflect or fabricate and the existence of intervening occurrences was such that the children's statements cannot be considered spontaneous declarations. The spontaneity was lacking both because of lapse of time and a lack of showing that the children were still startled from the event purportedly witnessed by them.

As we will subsequently explain, we do not consider the evidence here to have been sufficient to support the conviction absent the evidence of the children's declarations. Accordingly, we cannot hold the admission of the declarations to be harmless as the court did in *People v. Gross* (1979), 75 Ill. App. 3d 311, 393 N.E.2d 1308, where it found the other evidence of guilt to be strong. We hold the admission of the evidence to be reversible error.

Absent the testimony of the declarations of the children, evidence of defendant's guilt was meager. The circumstance that the child was injured while in the sole custody of the defendant would have had some probative value as corroboration. Testimony was presented that defendant said the child had fallen from a bed. The testimony of the physician that, in his opinion, the child could not have fallen from a bed then had some probative value to evidence that defendant had lied about the occurrence thus indicating he had a guilty state of mind. However, this amount of evidence would have been clearly insufficient to support a conviction.

Defendant argues that because of the failure of the proof without the improper evidence, we should reverse without remanding for a new trial. His position is supported by *People v. Davis* (1966), 35 Ill. 2d 202, 220 N.E.2d 222, and *People v. McMahon* (1980), 83 Ill. App. 3d 137, 403 N.E.2d 781. In those cases, the reviewing court held re-

versible error occurred in the admission into evidence of improperly obtained confessions of the defendants. The courts reversed without remanding, noting in each case that the evidence was clearly insufficient to support a conviction without the confession. The State cites *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, and *People v. Mordican* (1975), 33 Ill. App. 3d 196, 338 N.E.2d 107, *aff'd* (1976), 64 Ill. 2d 257, 356 N.E.2d 71. They are not directly in point. In *Taylor,* the supreme court affirmed an appellate court decision reversing a conviction and sentence and remanding for a new trial. (*People v. Taylor* (1978), 61 Ill. App. 3d 37, 377 N.E.2d 838.) The reversal had been based on the improper admission into evidence of a confession. The recitation of the evidence in the appellate court opinion might indicate that, absent the confession, the proof could not have supported a conviction. However, neither opinion indicates any contention was ever made in that respect. In *Mordican,* the reversal of a conviction and sentence and remandment was ordered because of the failure of the court to grant a hearing on a motion to suppress. Thus, unlike here, the propriety of the evidence in dispute had not been determined at the time remandment was ordered.

Based on the foregoing, we deem the appropriate order for us to enter is a reversal without remandment. We so order.

Reversed.

WEBBER and MILLS, JJ., concur.