STATE OF NEBRASKA, APPELLEE, V. JAMES A. DAVIS, APPELLANT.

397 N.W.2d 41

Filed December 5, 1986.    Nos. 86-291, 86-292.

Frank Shoemaker, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, James A. Davis, was charged in two separate informations with receiving or retaining stolen movable property belonging to another and having a value of more than $1,000, in violation of Neb. Rev. Stat. § 28-517 (Reissue 1985). The property in case No. 86-291 consisted of seven head of Holstein calves, while the property in case No. 86-292 consisted of a stock trailer. The sole issue as presented to us in this appeal by Davis is whether the property seized in each of the cases was obtained as a result of an illegal search and seizure in violation of Davis' rights under U.S. Const. amend. IV or Neb. Const. art. I, § 7. While our review of the record causes us to believe that the property was not illegally seized, because of action voluntarily taken by Davis at trial, we need not reach that issue in affirming the conviction and sentence.

During the week of June 4, 1984, 17 hogs and a stock trailer were stolen from a site in Phillips County, Kansas. The sheriff of Harlan County, Nebraska, received information to the effect that Davis had brought two of the stolen hogs into Orleans, Nebraska, to be butchered. On June 12, 1984, the sheriff contacted a member of the Nebraska State Patrol and relayed the information to him. On June 14, 1984, another member of the Nebraska State Patrol advised that he had driven past a farm located near Hendley, Nebraska, and had seen a blue stock trailer. The Nebraska State Patrol then contacted the sheriff of Furnas County, Nebraska, and advised him that there was a blue stock trailer located on property occupied by Davis and asked the sheriff to conduct a further investigation. The Furnas County sheriff drove west along the county road, past the Davis property. As he did so, he observed the trailer. He

turned around and parked on the side of the county road. Using a spotting scope to look for markings, he noticed there was no license plate on the trailer. He then pulled into the driveway and walked around to the east side of the house to where children were playing. He asked them if their parents were home, and, when they responded they were not, he walked around to the north side of the house. He then proceeded to the northwest, where he checked the trailer for identifying marks. Mrs. Davis then arrived. He told her he was "checking" the trailer because he believed it was stolen. The sheriff testified that Mrs. Davis disclaimed any knowledge of the trailer and told the sheriff to "do whatever [he] had to do."

The sheriff of Phillips County, Kansas, was summoned and asked to drive to the location in order to identify the trailer, which, by that time, had been pulled out near the road. When the sheriff of Phillips County, Kansas, arrived, he checked the trailer and, while doing so, mentioned to the Furnas County sheriff that calves in the fenced-in area in the southeast corner of the property were similar to those reported stolen in Kansas. The Furnas County sheriff informed Mrs. Davis that he was taking the trailer and that he would be back the next day because he believed the calves were stolen and he wanted the owner to identify them. He also testified that he asked Mrs. Davis if he could take the trailer and that she said he "could go ahead and take it because she had no knowledge of it."

On the following day the sheriff returned, accompanied by the Kansas sheriff, a brand inspector, and the owner of the calves. The Furnas County sheriff told the others to wait by the road while he went to the house and spoke to Mrs. Davis. He asked for permission to search. She asked what rights she had. He explained that she did not have to let them search; that he could get a search warrant. Following their conversation, Mrs. Davis signed a form granting the sheriff permission to search the property. The calves were then identified by the owner and taken from the premises. Davis was subsequently arrested and charged with each of the crimes.

On December 9, 1985, Davis appeared with counsel in the district court for Furnas County, Nebraska, and voluntarily waived trial to a jury. The charges in another case, involving the

theft of a lawnmower and a Rototiller, were dismissed, and the two remaining charges involved in this appeal were tried to the court.

Davis, through his counsel, renewed a motion to suppress which had previously been overruled by the district court. The court, once again, overruled the motion to suppress, and the case proceeded to trial on a stipulation of facts. None of the property seized was offered in evidence, but Davis did *stipulate* in open court that he had received the property identified, that the property had been stolen, that he knew the property was owned by others and was stolen, and that he lacked the intent to restore the property to its rightful owners. He further stipulated that the value of the property in each case was more than $1,000.

Specifically, in case No. 86-291 Davis stipulated that he "received the seven Holstein calves owned by Marvin VandeerVeen [sic] with the knowledge or belief that said seven Holstein calves were stolen and that James A. Davis lacked the intent to restore the Holstein calves to the said Marvin VandeerVeen [sic]." In case No. 86-292 he specifically stipulated that he "received the stocktrailer owned by Leo Goodale with the knowledge or belief that said stocktrailer was stolen and that James A. Davis lacked the intent to restore the stocktrailer to the said Leo Goodale." Additionally, he stipulated that the owners of the property identified the property which had been removed from their respective premises without their consent or permission.

As we have already indicated, we believe that the search and seizure can be held valid on a number of various grounds. We do not, however, reach that question in light of the record presented to us. Davis, having stipulated in open court, without objection, to all of the relevant facts necessary to convict him of the crimes charged cannot now claim error.

Based upon the stipulation made to the court, a prima facie case was made in each of the actions then pending before the court. There was nothing more for the court to do than to find Davis guilty of both charges. His guilt, however, was based upon the stipulation of facts and not upon any evidence acquired by reason of the alleged illegal search and seizure. As

noted by the eminent authority Wigmore in his work on evidence:

> An express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it.

9 J. Wigmore, Evidence in Trials at Common Law § 2588 at 821 (J. Chadbourn rev. 1981). And in 31A C.J.S. *Evidence* § 381 at 923 (1964), the author notes:

> A concession or stipulation as to a fact made for the purpose of trial has the force and effect of an established fact binding on the party making the same, as well as on the court, unless the court in its reasonable discretion allows the concession to be later withdrawn, explained, or modified if it appears to have been made by improvidence or mistake.

None of the exceptions, of course, are applicable in the instant case.

This general authority is in accord with the law in this jurisdiction. In the case of *State v. Wells*, 197 Neb. 584, 249 N.W.2d 904 (1977), the petitioner appealed from a determination on an annual review that petitioner was still a sexual sociopath as defined by the law then in existence. In particular, he assigned as error evidence regarding a 1953 rape which he had earlier stipulated to during trial. In rejecting the argument we said at 591, 249 N.W.2d at 908:

> There is a compelling reason to uphold the 1953 rape conviction, if it were an issue herein, without further argument. Defendant's retained counsel in open court stipulated to that conviction when attention was called to the definition of a sexual sociopath in section 29-2909, R.R.S. 1943.

Although Davis had earlier reserved his objection to the court's ruling on his motion to suppress, when the court again overruled his motion at trial, he stipulated without objection to the facts upon which the conviction was based. He cannot have

it both ways. He cannot, on the one hand, admit to the facts and, on the other hand, maintain that the court should not have considered the facts. Such stipulations are binding on the parties.

In *Martin v. Martin*, 188 Neb. 393, 398, 197 N.W.2d 388, 391 (1972), we said: "Parties are bound by stipulations voluntarily made and relief from such stipulations after judgment is warranted only under exceptional circumstances."

Even if we were to hold that the search violated Davis' fourth amendment rights (which we do not do), we would be unable to afford Davis any relief in view of the fact that he was convicted not upon the evidence seized but, rather, upon his own voluntary stipulation as to the facts.

The Illinois Supreme Court, in a case not dissimilar to the instant case, reached a similar conclusion. In the case of *The People v. Hare*, 25 Ill. 2d 321, 324, 185 N.E.2d 178, 179 (1962), the court said:

> This court has held that an accused may by stipulation waive the necessity of proof of all or any part of the case which the People have alleged against him and that having done so, he cannot complain in this court of evidence which he has stipulated into the record. (*People v. Polk*, 19 Ill.2d 310; *People v. Pierce*, 387 Ill. 608; *People v. Malin*, 372 Ill. 422.)

A case nearly on point with the instant case is *People v. Sanders*, 55 Ill. App. 3d 178, 370 N.E.2d 1213 (1977). In the *Sanders* case the defendant was charged and convicted of armed robbery. Prior to trial, a hearing was held on his motion to suppress certain statements which he had made while in custody following his arrest. The motion was overruled, and the parties proceeded thereafter to trial. At the trial Sanders' counsel informed the court that Sanders had entered into a plea negotiation with the State, in which certain of the charges would be dropped if Sanders pled guilty to certain other charges. Before, however, accepting the plea, the defendant inquired whether his entry of a guilty plea would terminate his right to appeal from the trial court's denial of his suppression motion. A recess was called in order to explore the problem. When court reconvened, it asked defense counsel whether he

had "something that will preserve [the defendant's] right to appeal." The defense counsel responded in the affirmative, indicating that he and the defendant had discussed the matter and agreed that the prosecutor could "tender an offer of proof to the court." The prosecutor then stated that he "would offer, and [he] understood that the defense will stipulate [to] the evidence presented at the defendant's preliminary hearing, also the evidence presented at the motion to suppress that we had last week." Also presented was the statement of facts which the prosecutor had recited a few minutes before the recess was called.

At this point defense counsel volunteered that the prosecutor was correct and that the defense would stipulate to the State's proof in the case, waive trial by jury, and allow the court to accept the stipulation and testimony at the earlier proceedings "as evidence."

On appeal Sanders raised the issue regarding the suppression of evidence. After review the court held that the evidence had been obtained in violation of Sanders' fourth amendment rights. Nevertheless, the court refused to reverse the conviction, saying in *People v. Sanders, supra* at 185, 370 N.E.2d at 1218:

> The general rule is that an accused "may by stipulation waive the necessity of proof of all or any part of the case which the People have alleged against him and that having done so, he cannot complain * * * of evidence which he has stipulated into the record." [Citations omitted.] To allow the defendant to escape the application of this rule on the record herein would enable him to avoid the effect of the stipulation which he agreed to make on two of the charges against him, while accepting the benefit of the State's agreement to dismiss the other two charges. This would be an incongruous and unacceptable result. [Citation omitted.] We therefore apply the rule that the defendant is bound on appeal by the stipulation which he freely and knowingly entered into at trial, and hold that any error by the trial court in failing to suppress the statement which the defendant gave the detectives, Bland and Fegan, could not have affected the outcome of the case as presented and was, therefore, harmless error beyond any reasonable

doubt.

To the same extent, we believe that, by stipulating to the facts, Davis has waived any alleged error, and we therefore affirm the convictions and sentences.

AFFIRMED.