THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH SCLAFANI, Defendant-Appellant.

Second District   No. 2—86—1009

Opinion filed February 22, 1988.

Patrick A. Tuite and Brent D. Stratton, both of Tuite, Mejia & Giacchetti, P.C., of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

In a stipulated bench trial, the defendant, Joseph Sclafani, was found guilty of obscenity (Ill. Rev. Stat. 1985, ch. 38, par. 11—20), sentenced to one-year conditional discharge, and fined $1,000 plus costs. On appeal, the defendant contends that (1) the trial court erred

in considering hearsay evidence contained in a stipulated police report; (2) the State failed to prove beyond a reasonable doubt that the defendant owned the bookstore in which the allegedly obscene magazines were sold; and (3) the trial court erroneously applied the contemporary community standard in determining whether the allegedly obscene materials, taken as a whole, lacked serious literary, artistic, political, or scientific value. We affirm.

The defendant was charged by information with selling three obscene magazines, namely, Macho Motel, Super Film Review No. 2, and Hard T.V.V., to Officer Siciliano (Siciliano) of the Du Page County sheriff's department. Prior to trial, the State and the defendant stipulated that Siciliano would testify as to the information contained in his police reports dated January 12, 18, 30, and February 24, 1984.

On September 16, 1986, at a pretrial status hearing, the following colloquy took place:

"THE COURT: Where's the stipulation that's going to be filed with the Court?

[Defense Counsel]: Right here.

THE COURT: You're stipulating to the officer's police reports. Are they contained in here?

[Assistant State's Attorney]: Your Honor, I'm tendering those reports at this time.

* * *

THE COURT: Have you examined those, counsel?

[Defense Counsel]: I have, Judge.

THE COURT: Any objection?

[Defense Counsel]: No, Judge. That's part of the stipulation.

* * *

[Assistant State's Attorney]: Your Honor, the stipulation does not include anything with reference to the Defendant's relationship to Studio 21. And the State would reserve the right to present evidence with respect to that point.

It was my understanding that would be contained in a stipulation, but, apparently, there was some confusion.

THE COURT: Then I don't have it all before me. I'm not going to read all this until you can show me it relates to this Defendant. When are you going to do that?

[Assistant State's Attorney]: Judge, it was my understanding that would be contained in the stipulation, and I did not receive a copy of the stipulation until this morning. Counsel and I had a meeting on this case several months ago, and I believe that was one of the points we covered. And it was my under-

standing it would be contained in the stipulation.

THE COURT: Well, if it is, then let's get it in there. If it isn't, we'll have to take evidence. And I'll have to set it for hearing for evidence.

Are you prepared to present evidence on that issue today?

[Assistant State's Attorney]: No, your Honor. I'm not.

THE COURT: Okay. When are you going to be ready to do that? If we haven't covered all issues and if she wants to present evidence, it's hardly a stipulated bench trial. It's hardly an issue for me to—

[Defense Counsel]: Might I suggest that your Honor set it for whatever date is convenient for the Court for argument? And perhaps the State's Attorney and I can get—perhaps we can stipulate to that. If nothing—if not prior to that time. I'm sure it would be simple for the State's Attorney to present whatever she's going to in order to prove whatever ownership she can. I can't stipulate that Mr. Sclafani was the owner.

THE COURT: September the 26th, 1985, this case first came up for trial, set by me. It has been continued one, two, three, four, five, six, seven times since then for stipulated bench trial. What is so difficult? That's over a year. How long is it going to take you to get the information you need, Miss Creswell?

[Assistant State's Attorney]: A week.

THE COURT: Fine. I suggest each of you withhold your exhibits. Put it over next week for setting. If you can agree on it, fine. If not, I'll set it for hearing."

On September 23, 1986, the following discussion took place before the trial court:

"THE COURT: Do you now have a stipulation?

[Defense Counsel]: Yes.

[Assistant State's Attorney]: Yes, we do, Judge.

* * *

THE COURT: You stipulate the police reports can go in?

[Defense Counsel]: Yes, Judge."

The trial court then received into evidence Siciliano's police reports pursuant to the parties' stipulation. Siciliano's reports indicated that on January 12, 1986, one of the defendant's clerks sold to him the magazine Macho Male, and, on January 18, 1986, Siciliano purchased the magazines Super Film Review No. 2 and Hard T.V.V. from a different clerk. Siciliano's reports stated that after he arrested the Studio 21 clerks, both clerks identified the defendant as the owner of

the bookstore. One of Siciliano's reports which contained background information on Studio 21 indicated that the defendant owned the bookstore.

During closing argument, the defendant contended that the police reports failed to show that the defendant owned the bookstore. Specifically, the defendant asserted that the only evidence demonstrating his ownership of Studio 21 was the hearsay evidence elicited from the defendant's clerk. In disagreeing with the defendant's contention, the trial court stated that the defendant waived any hearsay objections because the parties stipulated as to the content of the police reports. After hearing argument, the trial court found that the magazines at issue were obscene, and the defendant was sentenced to one-year conditional discharge and a $1,000 fine plus costs.

This appeal raises the following three issues: (1) whether hearsay statements contained in the stipulated police reports were properly admitted into evidence; (2) whether uncorroborated hearsay evidence derived from the police reports proved beyond a reasonable doubt that the defendant owned the bookstore; and (3) whether the trial court's use of a contemporary community standard was harmless error. Based upon our analysis of the applicable law in conjunction with the particular facts of this case, we affirm the trial court's order which found the defendant guilty of obscenity.

■ With respect to the first issue, the trial court found that the defendant waived objection to the admissibility of the police reports because they were admitted pursuant to the parties' stipulation. "An accused, by stipulation may waive the necessity of proof of all or part of the case which the People have alleged against him, and having done so, he cannot complain of the evidence which he has stipulated into the record." *People v. Hawkins* (1963), 27 Ill. 2d 339, 341, 189 N.E.2d 252, 253; accord *People v. Sanders* (1977), 55 Ill. App. 3d 178, 185, 370 N.E.2d 1213, 1218.

■ The defendant has challenged the trial court's ruling on the admissibility of the police reports on four separate grounds. First, the defendant asserts that he objected to the hearsay statements contained in the police reports in his motion to suppress, memorandum of law, and closing argument, and, therefore, he did not waive the issue of admissibility. We believe that the defendant has misunderstood the effect of a stipulation. Despite the fact that the defendant may have objected to the admissibility of the hearsay statements, those objections do not relieve him of his obligations under the stipulation. If the defendant was concerned over the unreliability of the hearsay statements contained in the police reports, he should not have entered into

an agreement allowing those statements to be admitted into evidence.

■■ Second, the defendant claims that the trial court erroneously ignored an alleged limitation which he placed on the stipulation. In his brief, the defendant states that he did not stipulate that the police reports and hearsay statements *could* be used as proof of ownership. As the record indicates, however, the defendant also failed to stipulate that the hearsay statements *would not* be admitted into evidence. Because the defendant's alleged limitation was not expressly agreed to in the stipulation, we decline to read an implied limitation into that agreement.

■■ Third, the defendant notes that the police reports contain two levels of hearsay, one level being the reports themselves and the second level being the clerks' statements made to Siciliano. The defendant then argues that although he may have waived any objection to the admissibility of the police reports based on the parties' stipulation, he did not waive objection to the second level of hearsay created by the clerks' statements to Siciliano. We deem as meritless the defendant's assertion that the stipulation be given effect only with respect to the first level of hearsay. As the stipulation agreement makes clear, there were no limitations on the extent to which the information contained in the police reports could be used.

■■ ■ Fourth, the defendant asserts that the trial court improperly considered the stipulation as conclusive proof of the proferred testimony. As the defendant correctly notes, stipulation as to the testimony of a witness is not conclusive proof of a factual matter in dispute. (See *People v. Lewis* (1984), 103 Ill. 2d 111, 114-16, 468 N.E.2d 1222, 1224-25.) Simply put, the trier of fact may consider the stipulated testimony of a witness along with other evidence in resolving a factual dispute. Here, the State's evidence of ownership was derived from the police reports, and the defendant offered no evidence in rebuttal. There is no reason for us to assume that the trial court improperly considered the stipulation as conclusive proof of ownership. Instead, we believe the trial court properly weighed the probative value of all the evidence presented in reaching its conclusion.

■ The defendant next contends that the State failed to prove beyond a reasonable doubt that he owned Studio 21. The defendant asserts that the State did not satisfy its burden of proof for the element of ownership because that element was established by uncorroborated hearsay.

A reviewing court will not set aside a criminal conviction unless the evidence is so unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Adams* (1985), 109 Ill. 2d 102, 115,

485 N.E.2d 339, 342, *cert. denied* (1986), 475 U.S. 1088, 89 L. Ed. 2d 730, 106 S. Ct. 1476.) We note that aside from the hearsay statements which indicated that the defendant owned Studio 21, the police reports contained direct evidence relating to the defendant's ownership of that bookstore. The report titled "background information" and dated January 30, 1984, indicated that Siciliano had determined through investigation that the defendant owned Studio 21. Nothing in the record rebuts the fact that the defendant owned the bookstore; nor has the defendant contended on appeal that he does not own the bookstore. Therefore, we need not address the defendant's contention that his conviction rested on uncorroborated hearsay where there is direct evidence which sufficiently establishes beyond a reasonable doubt that the defendant owned Studio 21.

■■ ■ In any event, as the State correctly notes, uncorroborated hearsay may be given its natural probative effect where admitted without objection. (See *People v. Collins* (1985), 106 Ill. 2d 237, 263, 478 N.E.2d 267, 278, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) As we determined earlier in this opinion, the defendant waived any objections to the police reports because they were admitted pursuant to the parties' stipulation. Therefore, we conclude that the trial court could have considered the uncorroborated hearsay evidence in determining the defendant's guilt.

■■■ ■ In his final contention on appeal, the defendant asserts that his conviction should be reversed because the trial court applied a contemporary community standard in determining whether the magazines, taken as a whole, lacked any serious literary, artistic, political, or scientific value. At trial, the trial court made the following finding:

> "Applying a state-wide standard, having examined all of the exhibits, the court finds that the average person applying contemporary adult community standards would find that taken as a whole, the three magazines in question appeal to the prurient interest, that they depict or describe in a patently offensive way ultimate sexual acts, and that they totally lack any serious literary, artistic, political, or scientific value."

In *Pope v. Illinois* (1987), 481 U.S. 497, ____, 95 L. Ed. 2d 439, 445, 107 S. Ct. 1918, 1921, the Supreme Court set forth the proper standard for the value prong of the obscenity test, stating:

> "The proper inquiry is not whether an ordinary member of any given community would find serious literary, artistic, political, or scientific value in allegedly obscene material, but whether a reasonable person would find such value in the material, taken as a whole."

While the trial court erroneously used the wrong standard for the value prong, if we determine that no rational trier of fact could find any value in the magazines, taken as a whole, the defendant's conviction shall stand because the error was harmless beyond a reasonable doubt. See *Pope*, 481 U.S. at ____, 95 L. Ed. 2d at 447, 107 S. Ct. at 1922; *People v. Morrison* (1987), 162 Ill. App. 3d 299, 515 N.E.2d 356.

■■■ The defendant has not contended that the principles set forth in *Pope* and *Morrison* should not apply to a case where the trial judge is the trier of fact. We see no reason why a trial judge who uses the wrong standard in finding that allegedly obscene materials have no serious value should be treated differently from a juror who, due to an instructional error, applies the wrong standard in reaching the same conclusion. Here, based on the contents of the magazines we believe that no reasonable person would find any literary, artistic, political, or scientific value in them. Rather than engaging in a detailed and extensive description of each magazine, we point out that the magazines contain pictures of naked or nearly naked men, women and transsexuals engaging in actual or imminent acts of masturbation, fellatio, cunnilingus, intercourse, homosexuality, or lesbianism. These pictures focus almost exclusively on the genitals of the models, and the sparse text describes the events taking place in the pictures. Therefore, we conclude that the trial court's erroneous use of the contemporary community standard was harmless beyond a reasonable doubt.

The defendant cites *People v. McGeorge* (1987), 156 Ill. App. 3d 860, 510 N.E.2d 1032, for the proposition that the trial court's use of the contemporary community standard is not harmless error. We believe that *McGeorge* is distinguishable from this case. In *McGeorge*, the defendant's expert testified that the magazines at issue had some value in the scientific community. (156 Ill. App. 3d at 869, 510 N.E.2d at 1038.) Here, the record indicates that the defendant's expert offered no testimony as to the possible literary, artistic, political, or scientific value of the magazines; instead, the defendant's expert concluded that the magazines did not appeal to the prurient interest of the average adult. Consequently, we determine that *McGeorge* does not apply to the facts of this case.

Accordingly, for the reasons expressed above, the decision of the trial court is affirmed.

Affirmed.

REINHARD and NASH, JJ., concur.